## JOSEPH EATON *versus* DANIEL JACOBS.

By R. S., c. 105, § 10, to constitute a disseizin, or such exclusive and adverse possession of lands as to bar or limit the right of the true owner thereof to recover them, it shall not be necessary for such lands to be surrounded with fences or rendered inaccessible by water; but it shall be sufficient, if the possession, occupation and improvement are open, notorious,† and comporting with the ordinary management of a farm; although tha part of the same, which composes the woodland belonging to such farm and used therewith as a woodlot, is not so enclosed.

Whether or not the open and exclusive possession of a tenant, continued for thirty years, was adverse, is a question of fact for the jury.

Hence, when the tenant proved his open and exclusive occupation for thirty years, receiving rents and profits without rendering any account thereof to any one, clearing the land and erecting buildings thereon, it is erroneous for the presiding Judge to instruct the jury to bring in a verdict *pro forma* for the plaintiff.

ON EXCEPTIONS from *Nisi Prius*, CUTTING, J., presiding. WRIT OF ENTRY.

The plaintiff traced a record title to the demanded premises back to 1824.

The defendant claimed title in himself by virtue of an alleged adverse possession since 1831.

*Paul T. Stevens*, called by defendant, testified:—Am acquainted with Daniel Jacobs, and have been since fall of 1829. He was on the place where he now lives in April,

1832, and has been there ever since. The farm was but little better than in a wild state; was, I think, new where the stumps had been taken out; there was a mere apology for a house, no room in it plastered; very poor barn; were, I think, no doors; was only framed with stuff that was picked up on the land. He commenced making improvements on it that season. I helped him fifteen days. The house now on the place is a very good one; think it would cost $700 or $800; a new barn was put on worth from $150 to $200; the old barn has been shingled; three-fourths of the place has been cleared; improvements on land I should think worth $400; is mostly well fenced; lived about two miles from him from 1837 to 1842.

*John Merrill,* called by defendant. Live in Sidney; moved there in 1832; first knew Jacobs in June, 1832; he then lived where he now does; he has resided there ever since. Our land joins. He has occupied and controlled the place the whole time since I moved there. In 1832, the house was very poor; has been a new barn built, and the old one repaired. The land was very stumpy; but very little of it was cleared; perhaps half an acre. Now about forty acres are cleared; the other ten woodland; good fence now; not any of any consequence in 1832. From 1842, for twelve or thirteen years, I was one of the assessors. I went there to take the valuation, and always found him in possession; was taxed to Jacobs; one year, quite recently, was taxed to Oliver and Daniel Jacobs. He was then living at home with his father; house worth some $700; the barn worth $150 or perhaps more. Improvements on the land I don't know the exact value of.

*Carey Ellis,* called by defendant. Have known Jacobs over forty years; live about three-fourths of a mile from him. He went on there in the fall of 1831. For thirty-two years he has occupied it. He alone has carried on the place and had the entire occupation of it during all that time; worth $600 or $700 when he went on; now worth $1700 or $1800; was in a rough state when he went on; was an old

house and barn.    He has built a house and barn; the build-ings worth $900; improvements on land perhaps $300; fences very poor when he went on; good cedar fence now.

*Cross-examination.* — The old house was either wholly or partly taken down; has cleared up several acres within past fifteen years; rent perhaps worth $50, not more certainly; farm worth $1800 since buildings were put on; not worth more than $50 per year if properly carried on.

*Seth Nason,* called by defendant.    Am a carpenter; I worked on Jacobs' farm nineteen years last summer; was a little house there; the top of the old one was worked into the new one; cellar under the whole house; is painted in-side and outside; one room painted, also the entry; other rooms plastered and painted.    I worked there four months; Jacobs paid me $150; paid $50 in cash, took cow for $25, and note for $75, which he paid at its maturity. ΄ The house certainly worth $800; barn built two years before the house; I worked on it some ten or twelve days; barn would cost from $175 to $200; followed carpenter's business some ten or twelve years; I did the work by the job; were several at work on the outside; Jacobs found the lumber and he boarded me; did not see Ancil Brackett while I was there; Jacobs then had two children at home.    The barn I meas-ured a few days ago; is 30 by 36 feet; Jacobs carried on and controlled the place while I was there; no one else had any thing to do with it.

*R. H. & G. C. Vose,* for the defendant.

*Evans,* for the plaintiff.

In granting a new trial, the Court proceeded, not upon the ground that the verdict was against the preponderance or weight of evidence merely, but for the reason that there was *no evidence whatever* to sustain it.

The ruling was undoubtedly correct.    The controversy respected the character of the possession in one of its mate-rial aspects.    Was it *adverse?*    There was no controversy as to the fact of possession, the length of time of it, or its

openness, notoriety and exclusiveness. But these, however clearly established, are not enough. One thing is wanting, *a claim of title.*

It was incumbent on the tenant to prove this. The burden was on him. There was not a particle of evidence that the tenant at any time, or on any occasion, ever set up a claim or title to any part of the demanded premises. He was competent as a witness, and might have testified—but was not called. The question was not put to any one of the witnesses by the counsel for the tenant, whether the defendant, to his knowledge, had ever asserted or set up a title in himself adverse to the record title.

A title of disseizin commences in wrong, and *no presumptions in its favor* are to be made. On the other hand, every presumption in favor of the true owner is to be made.

Possession merely, however open, notorious or exclusive, is not sufficient to establish title. It authorizes no presumption that it is *adverse also.* The law will presume, until some evidence to the contrary be produced, that the possession is *rightful*, and in subordination to the true owner. Angel on Lim., last edition, § 235, and cases cited.

Hence, a possession by one of several co-tenants or co-heirs, however long continued, exclusive and open, is never regarded as adverse without further proof. This is too well established and too familiar to need authorities.

Possession merely, as it bears upon title, is *equivocal.* It is perfectly consistent with an admission of title in another. It is not necessarily an assertion of title, or evidence of an asserted title, in the tenant. Something more is wanted to give it that character.

If the tenant has put on record a deed to himself, in most cases, probably, it would be held, accompanying possession, an assertion of title. That, or some other equivalent and significant act, must be done, before *possession*, which the law presumes to be rightful as to the true owner, can be held as *adverse* and wrongful.

In *Elmendorf* v. *Taylor*, 10 Wheat., 168, the Court say

the possession must be "*unequivocally* adverse." It must not be left uncertain. The uncertainty (if any) must be removed *by proof;* and that proof must come from the party upon whom is the burden.

Possession, even under claim of right, however strong that claim is asserted, as under deed recorded, has been held insufficient to work a disseizin of the true owner, if it appear that such claim was made by mistake. *Brown* v. *Gay,* 3 Maine, 126.

This principle has been repeatedly affirmed, and the case cited and sustained both here and in Massachusetts, and corroborates the position, that whether long continued, open and notorious possession be adverse or not, depends upon other things to be proved — viz. : — the intentions, purposes and claims of the party taking possession.

Our latest decisions in Maine are to this effect. In *Chadbourne* v. *Swan,* 40 Maine, 261, the instructions to the jury were, if they should find the original entry of the tenant was "*under claim to own the land,* * * * * and that he has since occupied the land as his own, *claiming it adversely,* acknowledging no other title," &c., &c.

These instructions were not found erroneous, though a new trial was granted in the case for another deficiency, not pertinent to the present case.

On p. 262, the Court say, " the possession of a tenant may be open, notorious and exclusive, and yet *not adverse* to the rights of the legal owner of the premises.

Whether it be so or not, must depend, therefore, in every case, upon proof to be adduced as to the further and independent fact of claim of title.

The case of *Otis* v. *Moulton,* 20 Maine, 205, where a title by disseizin was sustained, is by no means inconsistent with these views, but rather in accordance with them. The Court, in giving reasons for supporting the disseizin, say, (p. 211,) " the original disseizor" entered upon the premises "*under a deed recorded,*" and continued to occupy till he died, twenty-three years. " During all this time he was not disturbed in

his occupation, and there is proof that he claimed to do so by right," &c.

On p. 212 :—" The case presents all the elements necessary to constitute a disseizin. The occupation was open, notorious, exclusive, adverse and under a recorded title, with a claim of ownership according to that title," &c.

This " *necessary* element," upon which so much stress was there laid by the Court, is wholly wanting in the case at bar. There is not a glimmer of proof of its existence. Nothing, as the Court have said, " even tending to show" it.

A verdict, even, that the tenant has held quiet possession over twenty years, does not establish a disseizin. *Pejepscot Proprietors* v. *Nichols,* 10 Maine, 256.

The finding must be an *adverse* possession, or under claim of title, as well as a *quiet* one ; and must be upon proof establishing the fact " *unequivocally,*" to sustain such a defence.

In *Cook* v. *Babcock,* 11 Cush., 209, the Court say :—"All these elements," (actual, open, exclusive and adverse,) *are essential to be proved,* and the failure to establish any one of them is fatal to the validity of the claim." " In weighing and applying the evidence in support of such a title, the acts of the wrongdoer are to be construed strictly, and the true owner is not to be barred of his right, except upon clear proof," &c., citing 2 Greenl. Ev., § 557 ; Stearns on Real Actions, 39.

The language of TENNEY, C. J., in *Small* v. *Clifford,* 38 Maine, 214, in a case between co-tenants, is,—" From this fact alone," (possession by the tenant,) " an ouster is not to be presumed, but it may be proved by a *notorious claim of exclusive right,* accompanying exclusive possession."

Entering into exclusive possession, and " openly asserting his own exclusive property in the lands, denying the title of any other person, is an adverse possession," &c. Ib., 214.

Nothing short of this can overthrow the record title, which it is the object and policy of our laws to uphold. Angel on Lim., (last ed.,) §§ 380, 384, 390, note 1.

2. Although the question of adverse possession was for the jury, it was competent for the Judge, in his discretion, to give the direction which he did, the evidence to sustain the defence being wholly insufficient to authorize a verdict in favor of the tenant. This is the usual practice. *Smith* v. *Frye*, 14 Maine, 497 ; *Thorn* v. *Rice*, 15 Maine, 266 ; *Davis* v. *Maxwell*, 12 Met., 289, 290.

In *Mara* v. *Pierce*, 9 Gray, 307, the Court say, — " If, in point of law the evidence is entirely insufficient to authorize the jury to find *actual* notice," (which was the controverted fact there,) " the Court would so instruct the jury, and direct them to find a verdict accordingly," which was done in that case.

The case just cited bears some analogy to the present. Long continued and open possession was relied upon as *sufficient* evidence to warrant a jury to find actual knowledge of the existence of an unrecorded deed.

The Court said, it " might properly be submitted to the jury, *accompanied with other evidence* tending to show" knowledge, &c. ; " but none other of that character was offered." The same remark applies to the case at bar ; and the insufficiency in the one case, for reasons equally cogent, exists in the other.

To send this case back for a new trial, upon the absolute certainty which, upon an examination of *all the testimony* in both the former trials, must be seen to exist, that the defence cannot be sustained, would be doing the defendant an injury instead of a benefit.

The opinion of the Court was drawn by

Appleton, C. J. — The plaintiff traces a record title to the demanded premises as far back as 1827, but does not prove that during the last thirty years, he, or those from whom he derives his title, have been in possession.

The tenant entered into possession of the land in controversy in 1831, and has remained in the undisturbed occupation of the same to the present time. When he first entered

on the lot, most of it was in a state of nature.  He has since cleared and fenced it—built a house and barn thereon—paid the taxes assessed on the same, and received the rents and profits accruing therefrom to the present time. He is not shown to have entered under an agreement to purchase nor to have occupied in subordination to the outstanding legal title of the plaintiff, or in any way to have recognized its existence.

Mere possession is the first degree of title and constitutes a valid right to real property, except as against the legal owner.  A prior naked possession is sufficient to enable the possessor to maintain ejectment against an intruder.  *Hubbard* v. *Little*, 9 Cush., 476.  "Actual possession is *prima facie* evidence of legal title in the possessor, and it may, by length of time and negligence of him who hath right, by degree ripen into a perfect and indefeasible title."  2 Black. Com., 389.

The tenant, so far as the case discloses, entered without color of right.  His entry was a trespass.  His continued possession was a series of continued trespasses.  But every trespass, by force of the term, is adverse to the real owner. " There is a presumption," remarks GIBSON, C. J., in *Patterson* v. *Reigle*, 4 Barr., 201, " which lasts until it is rebutted, that an intruder enters to hold for himself, and it is not to be doubted that a trespasser, entering to gain a title, though conscious that he is a wrongdoer, will accomplish his object if the owner do not enter or prosecute his claim within the prescribed period.  But, to do so, it is necessary that the possession be adverse from the first; and, to infer that he intended it to be other, would be to impute to him an inconsistency of purpose."

"It appears," observes MELLEN, C. J., in *The Proprietors of the Kennebec Purchase* v. *Laboree*, 2 Greenl., 281, " that, on the trials which have taken place in the Supreme Judicial Court, before we became an independent State, it was never considered incumbent on the tenant, in the case of a count on the demandant's own seizin, to prove anything

more than his continued and exclusive possession and occupancy, for thirty years next before the commencement of the action, using and improving the premises, after the manner of the owner of the fee; such possession, occupancy and improvement, affording satisfactory evidence to the jury that such tenant claimed to hold the lands as his own."

These views have received the sanction of the Legislature. "To constitute a *disseizin,* or such exclusive and adverse possession of lands as to bar the right of the true owner thereof to recover them, it shall not be necessary for such lands to be surrounded with fences or rendered inaccessible by water; *but it shall be sufficient,* if the possession, occupation and improvement are *open, notorious, and comporting with the ordinary management of a farm;* although that part of the same, which composes the woodland belonging to such farm, and used therewith as a woodlot, is not so enclosed." R. S., 1857, c. 105, § 10.

The possession of the tenant was unquestioned. It had continued for thirty years. It was open and exclusive, resembling that of every farmer in the community in all its essential characteristics. The occupation of land, receiving rents and profits without rendering an account thereof to any one, clearing the land and erecting buildings thereon, are acts indicative of a claim of title adverse to all. These facts being established, it was for the demandant to show how such long continued occupation, under such circumstances, was consistent with a recognition of and subordination to his title, on the part of the tenant.

To constitute an adverse possession it is not necessary that there should be a rightful title. Disseizin excludes the idea of right. The fact of the possession, and the *quo animo* it commenced and continued, are the tests. The fact of open, notorious and exclusive possession was not controverted. The remaining inquiry related to the *intention* of the tenant. But this, by all the authorities, was a matter of fact to be determined by the jury and not by the Court. The intention may be ascertained by acts as well as by

'words, — indeed, more satisfactorily by the former than the latter, — for words may be deceptitious, and are more likely to be so than a continued series of acts, all tending in one direction and leading to one conclusion.

The presiding Judge peremptorily withdrew from the consideration of the jury the evidence which was before them. In this he erred. The intention of the tenant, whether occupying adversely or not, was for the jury. The verdict rendered was not their judgment upon the facts proved, but that of the presiding Judge.

It may not be amiss to remark, that, in the case as now presented, there is no proof of the material facts upon which. Mr. Justice CUTTING rests his opinion in *Eaton* v. *Jacobs*, 49 Maine, 559. There is no evidence that the tenant entered in subordination to the legal title, or with the intention or expectation of acquiring it by purchase. Of the correctness of his opinion, upon the facts before him, we have no doubt. But the law as there laid down is entirely inapplicable to the facts as now presented.

*Exceptions sustained.*

DAVIS, WALTON, DICKERSON, BARROWS and DANFORTH, JJ., concurred.

KENT, J., concurred in the result, and submitted the following views : —

I concur in the result, because I consider the case of *The Proprietors of the Kennebec Purchase* v. *Laboree*, 2 Maine, 281, as an authority directly in point, and as binding upon the Court. That opinion, evidently, is based upon the fact, that the long continued practice in Massachusetts and in this State has settled the law here, and not upon the doctrines of the common law as elsewhere understood. C. J. MELLEN, in that case, admits, in effect, that the decision cannot be sustained on the established principles of the common law as understood in England, or in other States of the Union. I think that, upon the general doctrines and analogies of the common law, the presiding Judge was justified

Eaton *v.* Jacobs.

in giving the directions he did. I do not propose to discuss the question at any length, but to state one or two principles, well established.

The demandant shows a perfect legal title to the land he claims. Why should he not recover possession of what he owns in fee? The tenant says he should not recover it. He shows no title by deed, — but he says I have a better title, acquired by disseizin of the true owner. The issue between the parties is not about present possession, but about the title to the premises. The tenant says he has acquired a title, — not by grant, or by right, but by a long continued wrong. No one doubts that he may thus acquire a title, — or at least such a right as enables him to hold against the real owner. But how is such a right or title acquired? Not by mere possession. It must have been an open, notorious, exclusive and continued possession for twenty years. But this is not enough. It must have been also *adverse* to the title of the true owner. All the other requirements may exist and yet be entirely consistent with an acknowledged possession in another. Possession, however open, exclusive and continued, does not itself import that it was adverse. It may be under a lease verbal or written, or under a life estate, or under a contract to cultivate. Indeed, the law always presumes that every possession is lawful and under some right. It does not assume that a man is attempting to steal his neighbor's land, and that he entered upon it without right and holds it as a naked trespasser, and in wrong and adversely to a legal title. This is an affirmative fact to be proved by the tenant, as the foundation of the title, which he sets up.

But it is said the Court and jury may infer that the holding was exclusive, because it is open, and adverse, and continued. And this is the whole question in this case. If this be so, why was this element of adverse holding inserted in the definition. If it is enough to prove the other points, or, if they constitute such disseizin as may represent a perfect title, why not omit the other?

Penobscot R. R. Co. *v.* Weeks.

An open and exclusive possession does not justify the presumption that it was also adverse. The presumption is decidedly the other way. How can a jury be justified in inferring the existence of a fact, which cannot necessarily or even fairly be deduced from the facts proved, — which facts, are, *at least,* as consistent with honest holding in subserviency to some title, as with the assumption that the holding was in wrong and adverse to the true owner? Why should the true owner be obliged to explain the nature of the holding by his adversary? The tenant, as all agree, is bound to establish the adverse nature of his holding as the very essence of his claim of title. He must establish this as an affirmative fact, either by direct proof of claim in words or by acts from which such adverse holding is fairly established. I do not see how it can reasonably be inferred from mere possession, — however open or exclusive.

There is less reason for so doing since the change of the law, by which parties and persons interested are allowed to testify as to their acts and intentions. Ought a party to be enabled to make out a title or right by adverse seizin, by proving mere actual possession for twenty years, without any other evidence as to the nature and object of his entry and holding, whilst he sits by his counsel, and declines to be examined as a witness? This, as I understand it, was the fact in the case at bar.