2006 ME 98

**Kevin J. WOOD**

v.

**Jean G. BELL.**

Supreme Judicial Court of Maine.

Argued: Jan. 23, 2006.
Decided: Aug. 7, 2006.

Frank K.N. Chowdry, Esq. (orally), Jensen, Baird, Gardner & Henry, Portland, for the plaintiff.

Aaron K. Baltes, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] Jean G. Bell appeals from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) granting Kevin J. Wood's motion to alter or amend the judgment and his motion for remittitur following a jury verdict in favor of Bell. The jury found that Bell proved title to the disputed parcel by adverse possession and was entitled to damages for Wood's intentional or knowing trespass and cutting of trees on that parcel. Bell argues that the court erred in vacating the jury verdict and in quieting title in Wood's favor. Bell further argues that the court erred by instructing the jury to disregard evidence she presented on the forfeiture value of the trees Wood cut and removed. Because we agree with Bell, we vacate the judgment of the Superior Court and reinstate the jury's verdict.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2] Viewed in a light most favorable to its verdict, the jury could have found the following facts. In September 1974, John and Frances Harriman offered to sell a parcel of land to their neighbors, Jean and Jack Bell.[1] The parcel, a wooded area, was located directly behind the Bells' house lot and adjacent to the Harrimans' neighboring lot. The parties discussed the transaction at the Bells' kitchen table. Their discussions resulted in a writing that both Harrimans signed, describing the consideration paid by the Bells and the land to be conveyed:

> Received of Jack & Jean Bell, Five Hundred and Fifty Dollars ($550.00) in payment in full of property abutting the land of Philbrick, from a point on the Hodgdon Rd along said Philbrick line in a Northeasterly direction to the land of David Harriman, southerly to the land of Dennis White and in a somewhat westerly direction to the Hodgdon Rd intersecting with the back point of land belonging to Jack Bell as shall be stated on a deed yet to be surveyed and executed.

The Bells and the Harrimans also sketched a map of the parcel at that time. The parties also agreed to have the parcel surveyed so that it could be properly described in the forthcoming deed, and they agreed to split the surveying costs.

[¶ 3] Following the transaction, the Bells believed they owned the disputed parcel. The Bells never asked anyone, including the Harrimans, for permission to use the parcel. Moreover, people who lived in the neighborhood believed the Bells owned it. The Bells also used the parcel as its owners, clearing and cutting trees for firewood, storing equipment, pasturing a cow and keeping other animals, gardening, and engaging in a number of recreational activities on the parcel. The Bells' five children did chores on the disputed parcel, played on it, and would sometimes ask children whom they did not like to leave.

[¶ 4] From 1974 until approximately 1981, the Bells paid property taxes for the disputed parcel directly to the Harrimans. The Bells had agreed to pay one-half of the total amount assessed on the disputed parcel and the Harrimans' remaining property, which were assessed as one for tax purposes. At some point in the early 1980s, however, Jean Bell decided that they should not have to pay an equal share of taxes for the disputed parcel because it had no road frontage and the Harrimans' remaining property fronted two roads.

---

1. Although Jack Bell, Jean Bell's ex-husband, has an interest in the outcome of this case, he is not a party.

[¶ 5] Because they still had not received a deed to the disputed parcel and because they were worried that the Harrimans felt that they did not receive enough money for it, the Bells hired an attorney in 1985 in an attempt to get a deed from the Harrimans.[2] Their attorney notified the Harrimans' attorney that his clients' position was simple: the Harrimans should execute a deed. Failing that, the Bells' attorney threatened to file a complaint for specific performance. The negotiations between the Bells and Harrimans, however, did not culminate in conveyance of a deed, although the Bells paid for a survey in 1986.

[¶ 6] The Bells divorced in 1996. Jean Bell subsequently remarried and moved to Alaska in 1998. John and Frances Harriman sold their remaining property to the Whittmores in 1997. In May 2002, the Harrimans quitclaimed the disputed parcel to John and Patricia Whittmore for $5000. Later that month, the Whittmores conveyed their interest in the disputed parcel to their son, Kevin Wood.

[¶ 7] When Jean Bell returned to Maine in June 2002, she went to the Whittmores' home to inquire about the activities she heard had been occurring on the disputed parcel. One of her sons had told her that some trees had been removed and a camper had been placed there. The Whittmores told Bell that they had purchased the disputed parcel from the Harrimans. Later, in a conversation with Wood, Bell maintained that she owned the disputed parcel and that he should take no further actions on it. Disregarding Bell's instructions, Wood cleared approximately an acre of trees, removing the stumps.

[¶ 8] In January 2003, Wood filed a complaint in the Superior Court, seeking a declaration that he and not Bell own the disputed parcel. Bell counterclaimed, seeking to quiet title on her behalf on the grounds that she acquired title, inter alia, by common law adverse possession. Bell also sought damages for trespass, as well as damages pursuant to 14 M.R.S. § 7552 (2005).[3]

2. Additionally, in May 1985, Jean Bell recorded an affidavit in the registry of deeds, together with a copy of the 1974 writing and contemporaneous sketch of the parcel, reflecting her belief that she and her husband owned the disputed parcel because they had paid for the property in full.

3. Pursuant to 14 M.R.S. § 7552(2) (2005), a person may not, without the owner's permission, cut down or otherwise carry away "any forest product," including logs, or an "ornamental or fruit tree," from the owner's property. The measure of damages for the owner of any trees taken pursuant to section 7552(2) may be the market value of the trees, 14 M.R.S. § 7552(3)(A) (2005), or, "in lieu of market value[,] the forfeiture amounts determined" pursuant to 17 M.R.S. § 2510(2), (3) (2005), 14 M.R.S. § 7552(3)(B) (2005). The party responsible for the removal of the trees may be liable for double damages if the act is done negligently, or treble damages if the act is knowingly or intentionally done. 14 M.R.S. § 7552(4) (2005).

Title 17 M.R.S. § 2510(2) provides:
2. Forfeitures. The following forfeitures may be adjudged for each tree over 2 inches in diameter that has been cut or felled:
  A. If the tree is no more than 6 inches in diameter, a forfeiture of $25;
  B. If the tree is over 6 inches and up to 10 inches in diameter, a forfeiture of $50;
  C. If the tree is over 10 inches and up to 14 inches in diameter, a forfeiture of $75;
  D. If the tree is over 14 inches and up to 18 inches in diameter, a forfeiture of $100;
  E. If the tree is over 18 inches and up to 22 inches in diameter, a forfeiture of $125; and
  F. If the tree is greater than 22 inches in diameter, a forfeiture of $150.
Additionally, 17 M.R.S. § 2510(3) provides that "[f]or the purposes of determining the forfeiture, the diameter of a tree shall be the diameter of the tree stump or the diameter of the tree at 4 ½ feet from the ground if the

[¶ 9] Following trial, the jury returned a verdict for Bell, awarding her title to the disputed parcel by adverse possession and $9800 in damages, which the court trebled pursuant to 14 M.R.S. § 7552(4)(B). Following judgment, the court granted Wood's motion for remittitur, upholding its earlier determination that Bell's evidence on forfeiture value was speculative because it is based on tree diameter and Bell did not present evidence establishing the diameter of the trees felled and removed from the disputed parcel. The court therefore found that the jury's verdict was not based on the evidence, and it reduced Bell's total damages to $4040.07.[4]

[¶ 10] Thereafter, Wood filed a motion to alter or amend the judgment, arguing that the evidence does not support the jury's adverse possession verdict. The court granted Wood's motion, finding that the Bells' possession of the disputed parcel was not adverse to the Harrimans because the Bells entered into possession in contemplation of their future ownership, which would have come only after conveyance of a deed. The court thus found that the Bells' possession of the land was permissive and not under a "claim of right." Therefore, the court quieted title in favor of Wood. Bell countered with a motion to alter or amend judgment, which the court denied. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

■ [¶ 11] At the conclusion of Bell's presentation of evidence, Wood moved for a directed verdict pursuant to M.R. Civ. P. 50(a). The court denied the motion, ultimately submitted the case to the jury, and

Wood repeated his Rule 50(a) argument in a post-verdict motion to alter or amend the judgment, which he stated was brought pursuant to M.R. Civ. P. 59(e). It is clear from Wood's post-verdict motion that he was seeking to have the jury's verdict set aside with entry of judgment in his favor, rather than moving to alter or amend judgment or for reconsideration. Thus, that part of the motion seeking to have the jury's verdict set aside "can only be regarded as a motion for a judgment notwithstanding the verdict." *Nordic Sugar Corp. v. Me. Guarantee Auth.,* 447 A.2d 1239, 1241 (Me.1982) (treating a M.R. Civ. P. 59 motion challenging the sufficiency of evidence at trial as a post-judgment M.R. Civ. P. 50(b) motion). Accordingly, we review the court's grant of Wood's motion by examining the "jury's verdict to determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury verdict." *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.,* 2002 ME 127, ¶ 15, 818 A.2d 995, 1001 (quotation marks omitted).

### B. Bell's Adverse Possession Claim

■ [¶ 12] To make out a claim for common law adverse possession, a party must prove that its possession and use of the land in question were: "(1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) of a duration exceeding the twenty-year limitations period." *Striefel v. Charles–Keyt–Leaman P'ship,* 1999 ME 111, ¶ 6, 733 A.2d 984, 989 (quotation marks omitted). "Whether specific acts are sufficient to establish the elements

---

remaining stump is higher than that distance."

4. Bell's forestry expert testified that the stumpage value of the trees Wood felled and

removed from the disputed parcel was $1346.69. The court trebled this amount to arrive at $4040.07.

of adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *Id.* (quoting *Falvo v. Pejepscot Indus. Park,* 1997 ME 66, ¶ 8, 691 A.2d 1240, 1243). "It is primarily for the factfinder to judge the credibility of witnesses and to consider the weight and significance of any other evidence. As such, [we] must give due regard to the trier of fact's determinations on credibility, weight[,] and significance of evidence." *Dombkowski v. Ferland,* 2006 ME 24, ¶ 28, 893 A.2d 599, 606 (alterations in original) (quotation marks omitted).

[¶ 13] The dispute in this case focuses on whether the Bells' possession and use of the disputed parcel was "hostile" and "under a claim of right." Hostile possession "means that the possessor does not have the true owner's permission to be on the land, and has nothing to do with demonstrating a heated controversy or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate." *Id.* ¶ 12, 893 A.2d at 602 (quoting *Striefel,* 1999 ME 111, ¶ 13, 733 A.2d at 991). Permission negates hostility. *Id.* Regarding the "claim of right" requirement, the claimant must be "in possession as owner, with intent to claim the land as [their] own, and not in recognition of or subordination to [the] record title holder." *Id.* (quoting *Striefel,* 1999 ME 111, ¶ 14, 733 A.2d at 991) (second alteration in original).

[¶ 14] The court found that the Bells had the Harrimans' implied permission to be on the disputed parcel by virtue of the 1974 writing, at least until the Bells became legal owners after receiving a deed. However, the jury could have reasonably found that the Bells believed that they owned the disputed parcel following the 1974 transaction and that the writing served as a receipt for their transaction.

The Bells testified that they believed a deed is merely evidence of ownership of property, and, even without a deed, they owned the disputed parcel. Furthermore, the jury could have reasonably found that the Harrimans believed they sold the property to the Bells in 1974 and that the Bells therefore owned it.

[¶ 15] Relying on *Frost Vacationland Props., Inc. v. Palmer,* 1999 ME 15, 723 A.2d 418, Wood argues that the Bells' possession was permissive because they undertook possession as tenants pursuant to the 1974 writing. In *Frost,* the parties signed a purchase and sale agreement for a parcel in a subdivision, pursuant to which the buyer paid a portion of the down payment and agreed to pay the remaining down payment at closing and the balance after closing. *Id.* ¶ 2, 723 A.2d at 420. The sale was never completed because, apparently, the seller could not convey the parcel. *Id.* ¶ 5, 723 A.2d at 420. The buyers, however, remained on the parcel for nearly five years and the seller did not accept any further payments from the buyers. *Id.* ¶¶ 5–6, 723 A.2d at 420. Subsequently, the seller brought a forcible entry and detainer action against the buyers to determine which party was entitled to possession. *Id.* ¶ 8, 723 A.2d at 421. We affirmed the grant of summary judgment in favor of the seller, holding that the buyers were not entitled to possession because they were merely tenants-at-will under the incomplete purchase and sale agreement. *Id.* ¶ 10, 723 A.2d at 421. In that case, it was undisputed that the parties' were entering into a purchase and sale agreement in which most of the purchase price was going to be paid later and, significantly, it was undisputed that both parties knew that title had not already passed. Here, however, the jury could have found that the parties believed that title passed in 1974, despite a deed not

being formally executed and delivered. Thus, the jury could reasonably have found that the Bells, unlike the buyers in *Frost*, did not possess the disputed parcel as tenants.[5]

[¶ 16] Because the jury could have found that both parties believed that the Bells owned the disputed parcel after the 1974 transaction, it could have reasonably concluded that the Bells did not possess the parcel with the Harrimans' implied permission, and it could have thus found that their possession of the disputed parcel was hostile.

[¶ 17] Regarding the "claim of right" requirement, there was substantial evidence to lead the jury to conclude that the Bells possessed the disputed parcel "as owner[s], with intent to claim the land as [their] own, and not in recognition of or subordination to [the] record title owner." *Striefel*, 1999 ME 111, ¶ 14, 733 A.2d at 992 (second alteration in original). As we have stressed, and as the court found, the Bells testified to their belief that they owned the disputed parcel after the 1974 transaction and they acted accordingly at all times. The court, however, found that the Bells acknowledged the need for a deed to pass formal title and their efforts to later obtain a deed amounted to recognition of the Harrimans' title. As we have noted, the jury was entitled to find that the Bells regarded passage of a deed as merely a formal legal requirement, one which served only to confirm their status as owners of the disputed parcel, but one

which they did not view as a condition to ownership. Additionally, the jury could reasonably have found that the Bells sought legal representation in the 1980s not to obtain legal title, which they believed they had, but to force the Harrimans to comply with the writing and convey the deed, the impetus for the Bells' attorney threatening a specific performance action in 1985. This set of facts does not compel a finding that the Bells were acknowledging subordinate legal title vis-à-vis the Harrimans because the issue of intent was properly left for the jury and there is sufficient evidence to support the jury's verdict. *See Eaton v. Jacobs*, 52 Me. 445, 453 (1864) (noting that the intention of an adverse possessor is a matter of fact to be determined by the jury).

[¶ 18] There is no dispute that Bell has met the remaining requirements for adverse possession. Accordingly, we vacate the judgment of the court that entered judgment in favor of Wood on Bell's adverse possession claim.

## C. Bell's Damages

[¶ 19] Bell argues that the court erred when it granted Wood's motion for directed verdict at the close of trial and decided that it would instruct the jury to disregard the evidence Bell presented on the forfeiture value of the trees Wood cut and removed from the disputed parcel. The court determined that Bell's calculation of forfeiture was speculative because the diameter of the felled trees had not

---

5. We also disagree with Wood's contention that characterizing the 1974 writing as an executory contract renders the Bells' use and possession permissive. *See Bell v. Bell*, 151 Me. 207, 210, 116 A.2d 921, 923 (1955) (stating the general rule that "one entering upon land under a verbal contract with the owner for the sale of the property ... recognizes the title of the grantor and is subservient to that title until he has performed or offered to perform his part of the agreement, fully"). By its verdict, the jury implicitly rejected this view and accepted the Bells' testimony that they believed they owned the disputed parcel after paying the full price. The fact that the Bells expected to receive a deed from the Harrimans does not change the analysis because the Bells viewed passage of a deed as a mere legal formality that evidenced what they already believed to be true.

actually been measured because Wood removed both the trees and their stumps. The court therefore instructed the jury to disregard the evidence on forfeiture and that it could only award Bell damages based on the stumpage value of the trees.

[¶ 20] "Jury instructions are reviewed in their entirety to determine whether they fairly and correctly apprised the jury in all necessary respects of the governing law." *Frustaci v. City of So. Portland,* 2005 ME 101, ¶ 15, 879 A.2d 1001, 1006 (quoting *Lee v. Scotia Prince Cruises Ltd.,* 2003 ME 78, ¶ 15, 828 A.2d 210, 214).

> On appellate review, a party can demonstrate entitlement to a requested instruction only where the instruction was requested and not given by the court and it: (1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions.

*Clewley v. Whitney,* 2002 ME 61, ¶ 8, 794 A.2d 87, 90.

[¶ 21] The issue here is whether Bell presented sufficient evidence to generate an instruction on forfeiture value. It is clear in Maine that "[d]amages are not recoverable when uncertain, contingent, or speculative." *Michaud v. Steckino,* 390 A.2d 524, 530 (Me.1978). A claim for damages "must be grounded on established positive facts or on evidence from which their existence and amount may be determined to a probability. They must not rest wholly on surmise and conjecture." *Id.*

[¶ 22] The jury heard evidence from Bell's forestry expert on the forfeiture value of the trees Wood cut and removed from the disputed parcel. This evidence was unrebutted and Wood did not object to its admission. The expert testified that he viewed aerial photographs of the cleared area of the disputed parcel (taken prior to clearing) and he then picked an area of trees that he felt were similar to the area of trees felled and removed. Bell's expert then measured the trees in the sample area, calculating the forfeiture value of the trees in the sample area, which he converted to a measurement of forfeiture value per square foot. The expert then multiplied that value by the square footage of the cleared area to arrive at the forfeiture value for the disputed parcel.

[¶ 23] We cannot say that the evidence Bell presented on forfeiture value was speculative or uncertain. Her expert presented an opinion based on a presentation of facts from which forfeiture value could reasonably be determined pursuant to 17 M.R.S. § 2510(2), (3) (2005). *See McDougal v. Hunt,* 146 Me. 10, 14, 76 A.2d 857, 860 (1950) (stating that "reasonable certainty is sufficient; absolute certainty is not required; it is sufficient if a reasonable basis for compensation is afforded, although the result be only approximate") (quotation marks omitted); *Reardon v. Lovely Dev., Inc.,* 2004 ME 74, ¶ 8, 852 A.2d 66, 69. Because Bell presented sufficient evidence to trigger an instruction on forfeiture value, we conclude that the court erred by instructing the jury to disregard the evidence on forfeiture value.

[¶ 24] Because we find that the court should have instructed the jury on forfeiture value, we now turn to Bell's argument that the court erred in granting Wood's motion for remittitur. "The assessment of damages is the sole province of the jury, and the amount fixed must not be disturbed by the trial court unless it is apparent that the jury acted under some bias, prejudice or improper influence, or made some mistake of law or fact." *C.N. Brown Co. v. Gillen,* 569 A.2d 1206, 1209 (Me.1990). The court granted Wood's mo-

tion for remittitur on the ground that the evidence did not support the jury's verdict in light of its instruction concerning forfeiture. Because we find that the court should not have instructed the jury to disregard the forfeiture evidence, we find that the jury's verdict was reasonable and based on the evidence. Moreover, there is no indication that the verdict was otherwise the product of bias, prejudice, or improper influence. Accordingly, we vacate the court's grant of Wood's motion for remittitur and we reinstate the jury verdict regarding Bell's damages.

The entry is:

Judgment vacated and the verdict of the jury is reinstated. This matter is remanded to the Superior Court for the assessment of costs and fees.