2011 ME 61

**Craig BURNS**

v.

**ARCHITECTURAL DOORS AND WINDOWS.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2010.
Decided: May 24, 2011.

Arthur J. Greif, Esq. (orally), Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, ME, for Craig Burns.

Stephen A. Bell, Esq. (orally), Mundhenk & Bell, LLC, Portland, ME, for Architectural Doors and Windows.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] Craig Burns was injured when an overhead garage door struck him on the head at his place of employment. His product liability claim against the installer of the door resulted in a judgment against him entered in the Superior Court (Penobscot County, *Murphy, J.*) following a jury's determination that the installer was not liable to Burns. Burns challenges, among other matters, the court's limitations on

his ability to argue certain causes of action during trial. Finding no error, we affirm the judgment.

## I. BACKGROUND

### A. Circumstances of Burns's Injury

[¶ 2] The following facts are taken from the evidence presented by Burns at trial. Burns was employed as a mechanic in the Whited Ford light-duty truck shop in Bangor. Whited owned and operated a commercial garage that had five garage bays used for light-duty automotive repairs. Each of the doors was controlled by an operator with three electric push-buttons—up, down, and stop. The buttons were "single-push" buttons, such that a person could push the "down" button and walk away, and the door would close. The operators did not have a safety mechanism that would stop a door from closing if it encountered an obstruction.

[¶ 3] In 1996, Whited sought to replace two of its wooden garage doors with new steel doors. Whited purchased replacement doors, manufactured by Wayne–Dalton Corporation, from Architectural Doors and Windows (known then as Portland Glass). ADW installed the doors on Whited's existing garage door operators.

[¶ 4] Burns began working at Whited in 1998. In November 2001, he was working on a truck outdoors because all of the garage bays were full. As he was walking into the garage to get a tool, a closing garage door struck his head and knocked him to the ground. He may have noticed the door coming down in the second before it hit him. Although he did not immediately notice any significant injury, over the next days and weeks he began to experience pain in his neck and shoulder from a herniated disc in his neck. He ultimately had surgery and missed eleven weeks of work.

[¶ 5] At the time of the accident, Burns had worked at Whited for three years, and he knew how the doors operated. He testified that it was obvious to him that when a garage door was closing, it would not stop if it hit a person or an object. In fact, he had seen vehicles struck by a closing door on at least two occasions. The shop was a busy, noisy place with "diesels running, cars running, [and] people hollering," such that a person could not hear the garage doors operating. Burns walked in and out of the garage doorways approximately eight times per workday.

### B. Procedural History

[¶ 6] On October 30, 2007, Burns sued Wayne–Dalton and ADW on a theory of product liability related to the garage door that struck him. His single count against ADW alleged only product liability. In his initial complaint, Burns alleged that the garage door was in a defective condition unreasonably dangerous to the ultimate user or consumer of the door because it did not have a mechanism that would cause it to stop or reverse if it encountered an object. He reiterated this allegation in both his first amended complaint and his second amended complaint, which was the operative complaint proceeding toward trial. Specifically, he alleged the following against ADW in his second amended complaint:

9. Said garage door was defective in that it did not have a mechanism which would cause it to stop or reverse if it encountered any object.

. . . .

20. The steel garage door reached the ultimate users of it (the employees of Whited) without significant change in the condition in which it was sold.

. . . .

22. The steel garage door was in a defective condition unreasonably dangerous to the ultimate user or consumer of the door.

[¶ 7] In December 2008, more than a year after Burns filed his initial complaint, Wayne–Dalton, the manufacturer of the door, moved for summary judgment, arguing, among other things, that the replacement door itself was not defective and that Wayne–Dalton had manufactured and supplied the replacement door to ADW without knowledge of how the door would be installed and operated at Whited. In support of its motion, Wayne–Dalton offered affidavits from its plant manager and the parts and service director at Whited. A week later, ADW also moved for summary judgment. In its motion, ADW adopted by reference Wayne–Dalton's summary judgment arguments and statement of material facts, and relied on the same evidence that had already been presented by Wayne–Dalton.

[¶ 8] Apparently recognizing at that stage of the litigation that ADW had sold Whited the door but not the operating mechanism, Burns argued in response to the motions for summary judgment, among other things, that both the manufacturer and the installer had a duty to warn him that the door, as installed on Whited's existing equipment, could be dangerous. By the time that Burns filed his opposing memoranda and statements of material facts in April 2009, nearly eighteen months had passed since he had initiated the litigation.

[¶ 9] After hearing from the parties, the court denied both defendants' motions for summary judgment. Because neither of the defendants manufactured, designed, or sold the door *operator*, claims of a defect in the manufacture or design of that operator could not survive summary judgment. *See Bernier v. Raymark Indus.,* *Inc.,* 516 A.2d 534, 537 n. 3 (Me.1986) (listing three forms of product liability: an error in the *design* process, a defect in the *manufacturing* process, or a *failure to warn* of a product hazard); Restatement (Third) of Torts: Products Liability § 2 (1998) (same). Thus, with a single count alleged against each defendant in a complaint that made no distinction between the door—the product alleged to be defective—and the closing mechanism—a product that neither defendant manufactured, sold, or installed—the court read the complaint generously to state a product liability cause of action for failure to warn Burns.

[¶ 10] Because Burns had referred to additional potential claims in his summary judgment argument, causing the possibility of confusion, the court also clarified the matters going forward for trial. Specifically, the court noted that Burns, in opposing ADW's motion, had "mischaracterized, or changed, his failure-to-warn claim against ADW" by arguing that ADW "had a duty to warn *that the door should only be used with an operator with a safety mechanism.*" (Emphasis added.) Because that cause of action had not been pleaded, the court clarified that Burns's claim going forward was limited to the product liability claim against ADW alleging that ADW failed to warn Burns "of the increased potential for crush injuries" presented by the door itself.

[¶ 11] Burns settled his claim against Wayne–Dalton on the eve of trial, and any liability on Whited's part had been addressed through workers' compensation proceedings. Burns therefore proceeded to trial only on his remaining defective product claim against ADW.

[¶ 12] ADW moved in limine to prevent Burns from arguing or offering evidence on claims not pleaded. The court granted the motion before trial and held,

consistent with its earlier announcement, that Burns's claim against ADW would be tried "as a failure to warn case." Burns continued to press alternative arguments, roughly framed as follows: the door was defective as installed; ADW negligently installed the door; and ADW negligently breached a duty to advise Whited about the door controls. The court declined to allow argument on those claims and specifically determined that Burns's defective-as-installed argument was based on the "component parts doctrine," which has not been adopted in Maine.[1] The court further ruled in limine that Burns had not pleaded, and therefore could not argue, that ADW had a separate, independent duty to warn Burns's employer, Whited, regarding Whited's existing equipment.

[¶ 13] In January 2010, the court held a two-day jury trial on Burns's product liability claim against ADW. Despite the pre-trial rulings, Burns again attempted to offer evidence to support claims other than the failure-to-warn product liability claim. Based on its pretrial rulings, the court prevented Burns from offering such evidence. At the close of Burns's case, ADW moved for judgment as a matter of law, *see* M.R. Civ. P. 50, but the court denied this motion.

[¶ 14] At the end of the trial, the court instructed the jury on product liability and the elements of a failure-to-warn cause of action. Consistent with Maine law, the court instructed, "a seller has no duty to warn of a danger that is obvious and apparent to users of the product." *See Hatch v. Me. Tank Co.,* 666 A.2d 90, 94 (Me.1995). The court declined to give Burns's proposed instruction that a seller has a duty to warn users of even obvious dangers "if it is 'foreseeable that users of the product will proceed to encounter that hazard out of necessity, lack of a safe apparent alternative, or through momentary inadvertence.'" *Id.* (quoting *Marois v. Paper Converting Mach. Co.,* 539 A.2d 621, 624 (Me.1988)). The court also told the jury that the court had found, based on the law and the evidence presented, that ADW had provided no warning to Burns. The court left to the jury the remaining questions presented by Burn's product liability claim: duty to warn,[2] causation, and damages.

[¶ 15] The jury was given a special verdict form with seven questions. On the first question, the jury found that ADW did not have "a duty to warn [Burns] of a danger sufficiently serious to require a warning on the garage door." Because the jury reached this determination, the verdict form did not require the jury to an-

---

1. Burns did not plead a claim that the door was defective based on the component parts doctrine. *See* Restatement (Third) of Torts: Products Liability § 5 (1998). Because of Burns's efforts to shift his theory of liability during pre-trial proceedings, we cannot accurately identify every theory that he attempted to present.

2. The court submitted the question of duty to the jury for it to determine, as a question of fact, whether the seller knew or should have known of a danger sufficiently serious to require a warning. The court submitted this question to the jury in an excess of caution, noting a disagreement among legal authorities about whether the court or the jury should determine issues of foreseeability related to the existence of a duty to warn. *See* George W. Flynn & John J. Laravuso, *The Existence of a Duty to Warn: A Question for the Court or the Jury?,* 27 Wm. Mitchell L.Rev. 633 (2000), and cases cited therein. The record reveals that, before the court made its ruling, Burns had proposed jury instructions that included the question of duty and that neither party objected when the court ruled that the jury would have to resolve factual disputes about the existence of a duty to warn. In their briefs, neither Burns nor ADW challenges the court's submission of this question to the jury.

swer any additional questions regarding causation or damages. The court entered a judgment for ADW, and Burns timely appealed. Burns has raised multiple issues on appeal.

## II. DISCUSSION

### A. Identifying the Plaintiff's Cause of Action

[¶ 16] Burns argues that he should not have been limited at trial to a product liability claim for failure to warn. This argument implicates the reach of notice pleading in litigation. *See Johnston v. Me. Energy Recovery Co.*, 2010 ME 52, ¶ 16, 997 A.2d 741, 746 (stating that Maine is a notice pleading state). Notice pleading requires that a complaint give "fair notice of the cause of action," *id.* (quotation marks omitted), by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," M.R. Civ. P. 8(a)(1).

[¶ 17] A complaint "need not identify the particular legal theories that will be relied upon," but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief. *Johnston*, 2010 ME 52, ¶ 16, 997 A.2d at 746; *see Champagne v. Mid–Me. Med. Ctr.*, 1998 ME 87, ¶ 18, 711 A.2d 842, 848 (stating that notice pleading requires a party to "aver[ ] the essential elements" of a claim). A party may not, therefore, proceed on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action. *See Johnston*, 2010 ME 52, ¶ 16, 997 A.2d at 746; *Champagne*, 1998 ME 87, ¶ 18, 711 A.2d at 848.

[¶ 18] Here, Burns pleaded a single count of product liability against ADW. The court's conclusion in limine that Burns

had not properly pleaded a negligence claim, a defective-design-as-installed claim, or a component-parts claim is a legal determination that is subject to de novo review. *See Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676, 679. To be clear, we are not called upon to determine whether any of the alternate theories could have been tried had they been properly pleaded and been the subject of discovery. Rather, we address several, but not all, of Burns's alternate theories to determine whether the trial court properly limited the evidence and argument that Burns could present to the jury based on the facts that he did plead.

[¶ 19] Burns first argues that he should have been permitted to offer evidence and argument of a design defect, *see Bernier*, 516 A.2d at 537 n. 3, because the garage door that struck him was defective "at the time it le[ft] the seller's hands," quoting comment g of the Restatement (Second) of Torts § 402A (1986). As comment g makes clear, however, an injured person can prevail in such a design defect claim only if the product left the seller's hands "in a condition not contemplated by the ultimate consumer." *Id.* § 402A cmt. g. Burns made no such allegation. Rather, he alleged and produced evidence to show that ADW, with Whited's knowledge, left the door operator—a separate product—in the same condition that existed before ADW replaced the door and that Burns understood how the door operator functioned throughout his employment at Whited. Pursuant to Burns's complaint, therefore, the door did not leave ADW's hands "in a condition not contemplated by the ultimate consumer." *Id.*

[¶ 20] As to his theories related to the installation of the door, although evidence that ADW should not have installed the door on Whited's operator could have been relevant and admissible in establishing a

negligence claim, *see Belyea v. Shiretown Motor Inn, LP*, 2010 ME 75, ¶ 6, 2 A.3d 276, 278; M.R. Evid. 401, 402, Burns did not allege negligence but instead pleaded only a product liability claim. To the extent that Burns's product liability claim can be viewed as alleging a *design defect*, again the relevant question is whether there was a flaw in the design of the challenged product—the door.[3] Burns offered no argument or evidence concerning any design defect in the door itself, however, but instead focused on the alleged defective condition of the door operators to which the door was connected and sought to cast his product liability claim as alleging a design defect "as installed." That late attempt to insert a component parts claim, which would be a new theory in Maine law, was similarly appropriately rebuffed by the court.[4]

[¶ 21] Maine's notice pleading standard may be forgiving, *see* M.R. Civ. P. 8(a)(1); *Johnston*, 2010 ME 52, ¶ 16, 997 A.2d at 746; it does not, however, permit a party to shift his cause of action at any point in the proceedings. Although an initial pleading may be presented in general terms, certainly by the time the parties are addressing a motion for summary judgment, a plaintiff must be prepared to clearly identify the asserted cause or causes of action and the elements of each claim. When the plaintiff has failed to do so, it is well within the court's authority to provide such clarification by defining the claims that will be presented at trial. Without such definition, the parties may waste time and money litigating extraneous issues not generated by the pleadings.

[¶ 22] Accordingly, the court acted properly in clarifying through its summary judgment order the nature of the cause of action that would be tried to the jury. Neither before nor after the summary judgment was entered did Burns take steps to add a claim to his complaint or otherwise amend his complaint to clarify his cause of action.[5] Nonetheless, he sought to offer proof at trial of several alternate claims, despite the court's consistent reminders about the nature of the cause of action being tried.[6] The court properly denied Burns's efforts to circumvent the effect of the court's clarification in the summary judgment order.

## B. The Product Liability Claim for Failure to Warn

[¶ 23] We move then to consider the court's rulings during trial regarding

3. Although we have recognized that liability imposed upon *a failure to warn* bears some resemblance to a negligence action, *see Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 196–97 (Me.1990), we have drawn no such parallel between a *design defect* claim and a negligence claim.

4. Burns additionally sought to establish that he could have become a better advocate for safety with his employer if he had been "warned" by ADW that a different installation mechanism would be safer, that other safety mechanisms were available, or that it was not very expensive or time consuming to change the mechanism. It is not clear what cause of action is asserted with this claim, however, as it appears that much of Burns's complaint lies with his employer, which chose to have the door installed on the existing mechanism. Burns's claims against the employer were appropriately addressed through the Workers' Compensation system.

5. Nor is it likely that the court would have allowed such an amendment at that stage of the litigation, almost two years after the filing of the complaint.

6. The presentation to the jury was made unnecessarily complicated by counsel's persistence in ignoring the court's clarification of the claim as a product liability claim for failure to warn, causing the court at one point to announce at sidebar, "it's going to stop."

Burns's product liability claim.[7] To establish a claim that a product was defective due to a failure to warn, a party must prove three elements in addition to those explicitly stated in the defective product statute: (1) the defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury. *See Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1145 (Me.1995). The court concluded, without objection from either party, that no evidence of a warning had been presented, therefore determining that the plaintiff had met his burden regarding the second element. That left the questions of duty, proximate cause, and damages for adjudication.

[¶ 24] Burns asserts that the court erred in denying his requested instruction that a seller has a duty to warn of a danger, even if the danger is obvious and apparent to users of the product, if "it is foreseeable that users of the product will proceed to encounter that hazard out of necessity, lack of a safe apparent alternative, or through momentary inadvertence." *Marois*, 539 A.2d at 624. The court concluded that this instruction was not required because Burns had been aware for years of the specific danger posed by the product at issue. *See id.* at 624–25; *Hatch*, 666 A.2d at 94–95 (holding that the *Marois* instruction was not required when the deliberate misuse of a product produced a danger that was obvious, known, and continuous over the course of several months).

[¶ 25] We need not determine whether the court erred in declining to give the additional instruction in this case because, even if ADW had a duty to warn Burns of the crush risk, Burns offered no evidence at trial that ADW's failure to place a warning on the door *caused* Burns's injury. *See Bouchard*, 661 A.2d at 1145. Burns testified that he knew of the danger but nevertheless entered the garage while the door was closing. In those circumstances, no warning placed anywhere on the door would have prevented Burns's injury.

[¶ 26] Accordingly, even if ADW had a duty to warn Burns of the product hazard,

---

7. To allege a product liability claim in Maine, a plaintiff must state facts that satisfy the elements of the claim set forth by statute:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2010). Based on this statutory language, the elements of a defective product cause of action asserted against a seller are:

> (1) the named defendant sold the goods or products;
> (2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;
> (3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;
> (4) the defendant was engaged in the business of selling the goods or products;
> (5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and
> (6) the plaintiff or the plaintiff's property suffered physical harm.

*See id.*

ADW was entitled to judgment in this matter because Burns failed to establish causation for the single claim that he properly pleaded. *See* M.R. Civ. P. 50, 61; *cf. Koken v. Black & Veatch Constr., Inc.*, 426 F.3d 39, 43, 49–51 (1st Cir.2005) (affirming summary judgment when the plaintiff offered no evidence that the failure to give certain warnings *caused* the alleged injury to its property).

[¶ 27] In sum, the court did not err in limiting the evidence and argument presented by Burns, it did not err in its extensive trial rulings, and any error in the jury instructions regarding the duty to warn was harmless, *see* M.R. Civ. P. 61. Burns's remaining arguments are unpersuasive.

The entry is:

Judgment affirmed.