STATE OF MAINE                                    SUPERIOR COURT
                                                  LOCATION: CARIBOU
AROOSTOOK, ss                                     DOCKET NO. CARSC-CV-17-78


THE AROOSTOOK MEDICAL            )
  CENTER,                        )
         Plaintiff               )
vs.                              )                ORDER REGARDING
                                 )                PLAINTIFF'S MOTION
                                 )                TO DISMISS DEFENDANT'S
                                 )                COUNTERCLAIM
STEPHANIE GRAVES                 )
         Defendant               )


The Aroostook Medical Center, Plaintiff, (hereafter referred to as TAMC) has brought suit

against Stephanie Graves, Defendant, (hereafter referred to as Graves) to recover a portion of

monies paid to Graves in the form of a sign on bonus and educational loan assistance. Graves

timely answered the complaint and also brought a counterclaim seeking damages for loss of

income and emotional distress arising from her termination from employment. On December 1,

2017 TAMC filed a Motion to Dismiss Graves' counterclaim.


In its Motion to Dismiss, TAMC asserts Graves' counterclaim is moot due to Graves not

complying with 5 M.R.S. § 4622 of the Maine Human Rights Act and is barred from recovering

monetary relief. In her objection to the motion Graves asserts she is not seeking redress under the

Maine Human Rights Act and instead asserts her claim for relief is based on breach of contract

and that her employment was terminated without cause.


From a review of the pleadings, the following facts are not in dispute. TAMC extended Graves

an offer of employment by a Letter of Employment Offer dated July 21, 2015. Graves accepted

1

the offer and began employment on September 20, 2015. The employment agreement included a sign on bonus of $15,000.00 and educational loan assistance of $18,411.40. The employment agreement further contained terms for repayment of a portion of the sign on bonus and educational loan assistance if employment was terminated within three years and ten years respectively. On September 15, 2016 TAMC suspended Graves' employment, and on September 30, 2016 TAMC terminated Graves' employment for cause. [1] *See Complaint and Answer, paragraphs 1-18, 22, 24-26.*

A predicate to addressing TAMC's Motion to Dismiss is determining what claim for relief is being made by Graves. M.R.Civ.P. 8(a) states:

> A Pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief which the pleader seeks. Relief in the alternative or of several different types may be demanded.

The purpose of the rule is to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests. *Conley v. Gibson*, 355 U.S. 41. A complaint should not be dismissed unless it appears to a certainty that the plaintiff is not entitled to relief under any facts he might prove to support his claim. 2 Harvey, *Maine Civil Practice*, §8.2 at 358 (3d ed. 2015-2016).

Graves does not assign a title to her counterclaim theories, such as "breach of contract", "wrongful termination", or "discrimination." Rather, Graves makes averments that generally explain the source of stress causing her to suffer from a disability, which she identifies as Severe

---

[1] In her answer to the complaint, although Graves admits the termination was based by TAMC as for cause, she denies the allegations of making inaccurate entries or violating any duties and otherwise denies that her conduct authorized TAMC to terminate employment for cause.

2

Adjustment Disorder with Disturbance of Emotions and Conduct. *Counterclaim paragraphs 3-6.* She further describes communications between her and TAMC regarding the effect of the stress on her work performance. *Counterclaim paragraphs 7-10*, 12. And Graves specifically avers that she was "at all times capable, with reasonable accommodations, of performing the essential functions of her job." *Counterclaim paragraph 13*. But to ascertain what claim is being made, it is helpful to identify those averments that describe what a defendant *did* or *failed to do* that is actionable. In her counterclaim, Graves makes two such averments.

In paragraph 14, Graves avers that TAMC failed to provide accommodations and failed to allow her an opportunity to undergo treatment. *Counterclaim paragraph 14*. And in paragraph 15 Graves avers TAMC terminated her position as a result of her disability. *Counterclaim paragraph 15.*

Lastly, in her counterclaim Graves avers the effect of the alleged actions and the relief sought, specifically a loss of income and emotional distress. *Counterclaim paragraph 16.*

In short, the claim being made by Graves in her counterclaim can best be interpreted as a claim for wrongful employment termination due to a disability. She describes her disability and alleges TAMC terminated her position without making any accommodations. 5 M.R.S. § 4572(1)(A) of the Maine Human Rights Act deems it unlawful employment discrimination for an employer to refuse to hire or discharge or otherwise discriminate against an employee because of physical or mental disability. Graves' counterclaim in all respects appears to make a claim for employment discrimination as defined by the Maine Human Rights Act.

3

But the Maine Human Rights Act precludes an award of civil penal damages, compensatory damages, punitive damages or attorney fees if a complaint has not been timely filed with the Maine Human Rights Commission. 5 M.R.S. § 4622(1) states:

> Attorney's fees under section 4614 and civil penal damages or compensatory damages and punitive damages under section 4613 may not be awarded to a plaintiff in a civil action under this Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the commission……

No such allegation is made in Graves' counterclaim. By all accounts Graves did not file a complaint with the commission. And at this time, any filing with the commission would be untimely as complaints must be filed with the commission within 300 days of the alleged act of unlawful discrimination. 5 M.R.S. § 4611.Graves was terminated on September 30, 2016, which would result in a deadline for filing of July 27, 2017.

Section 4622 has been interpreted by the Law Court to render moot untimely claims. In *Gordon v. Cummings* the law Court stated "Before a plaintiff with a MHRA claim may recover attorney fees and damages, the plaintiff must establish she first brought a claim before the Maine Human Rights Commission." 2000 ME 68, ¶ 11. In *Gordon,* there were no other remedies available to the plaintiff pursuant to section 4613 other than attorney fees and civil damages, so the Court deemed plaintiff's claim moot. *Id.*

In this case, Graves did not timely file a complaint with the Maine Human Rights Commission. Pursuant to Section 4622, Graves is barred from pursuing a claim pursuant to the Maine Human Rights Act for a monetary award for attorney's fees, civil penal damages, compensatory damages

4

or punitive damages. The only relief pursuant to the Act potentially remaining available is reinstatement pursuant to section 4613(B)(2). [2]

In her objection to the Motion to Dismiss, Graves acknowledges her claim is not based upon the Maine Human Rights Act, but is rather a breach of contract claim and that TAMC lacked cause for terminating her employment. From the pleadings, TAMC and Graves are in agreement that an employment agreement existed, and that TAMC terminated her position. The Letter of Employment Offer, which TAMC and Graves agree is part of the employment contract, *(See Complaint* and *Answer paragraph 8)* sets forth a termination provision. In the paragraph titled TERMINATION, a list of "for cause" reasons for immediate termination are set forth, but the termination clause also states that either may terminate the employment without cause at any time upon Ninety (90) days written notice. And TAMC and Graves also agree via their pleadings that TAMC's reason for termination was based on cause. *Complaint and Answer paragraph 24.* But Graves denies that her conduct was in violation of any duties and denies that cause for termination existed. *Answer paragraph 19-21,23.*

Although generally employment for an indefinite period is terminable at the will of either party, "parties may enter into an employment contract terminable only pursuant to its express terms— as "for cause"—by clearly stating their intention to do so, even though no consideration other

---

[2]

As for reinstatement, Graves did not request such form of relief in her counterclaim. And in an email from her attorney dated November 27, 2017, it was indicated that due to a new employment opportunity she was not seeking equitable relief and was seeking only monetary damages. But in her objection to this motion Graves indicated her new job was subject to multiple conditions and she was reserving for trial her right to seek reinstatement.

than services to be performed or promised is expected by the employer, or is performed or promised by the employee." *Larrabee v. Penobscot Frozen Foods, Inc,* 486 A.2d 97, 99-100 (Me. 1984).

It would appear the parties had entered such an agreement in this case. The employment agreement was for an indefinite period, but contained a specific termination clause setting forth specific reasons for immediate termination for cause, but also termination by either party on ninety (90) days written notice. And through their respective pleadings in the Complaint and Answer, TAMC and Graves agree a contract existed, and that the reason given by TAMC for terminating her employment was "for cause", but Graves denies such "cause" existed. In other words, the pleadings clearly identify a factual issue in dispute being whether "cause" existed. And whether or not "cause" existed would impact TAMC's recovery on its claim for reimbursement of a portion of the sign on bonus and educational loan assistance.[3]

For a breach of contract claim, a litigant would need to establish the existence of a contract, breach of said contract, and the extent of damages caused by said breach. A complaint need not identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief. *Burns v. Architectural Doors & Windows,* 2011 ME 61, ¶ 17. A party may not proceed on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of a cause of action. *Id.* In her counterclaim, Graves alleges she was hired by TAMC to work as a physician's assistant. *Counterclaim*

---

[3] Although the Court notes that claims for reimbursement may be made in the event employment is terminated for "any" reason.

6

*paragraph 1.* This allegation, coupled with the parties agreement in their pleadings that an employment agreement existed (see *Complaint and Answer paragraph 8)* is sufficient notice of the existence of a contract. And in her counterclaim, Graves alleges TAMC terminated her position as a result of her disability. *Counterclaim paragraph 15.* As previously discussed Graves denied all assertions that TAMC had cause to terminate her position. *Complaint and Answer paragraphs 18-19, and 23.* TAMC cannot sustain that it was not on notice that Graves was alleging that TAMC did not have cause to terminate her position. Lastly, in her counterclaim Graves alleges that as a result of her termination she suffered a loss of income. Accordingly, the Court finds that Graves has sufficiently plead a claim for breach of contract for terminating her position without-cause which would expose TAMC for damages for not giving Ninety (90) day notice in accordance with the agreement. Those damages are limited however to lost wages for those Ninety (90) days and Graves is not entitled to damages for emotional distress. *Gayer v. Bath Iron Works Corp.,* 687 A.2d 617.

In summary the Court grants TAMC's motion to Dismiss in part, in that any claim for monetary damages that could be awarded pursuant to the Maine Human Rights Act is moot and Graves is barred from pursuing such damages. Graves may however pursue her counterclaim for lost wage damages based on her allegations that TAMC terminated her employment without giving proper Ninety (90) day notice, but those damages are limited to Ninety (90) days of wages.[4]The Court reserves ruling further on Graves' "reserved" claim for reinstatement. TAMC asserts Graves has

---

[4] By this ruling the Court is in no way suggesting the sustainability of Graves proving this claim at trial; if TAMC succeeds in meeting its burden of proof establishing it had cause to terminate Graves, then her counterclaim would fail.

7

given inconsistent responses regarding a request for reinstatement. The Court will rule on that issue either at trial or by motion in limine.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R.Civ.P, 79(a).

Dated: February 21, 2018

_____
Justice, Superior Court

STATE OF MAINE                          SUPERIOR COURT
                                        LOCATION: CARIBOU
AROOSTOOK, ss                           DOCKET NO. CARSC-CV-17-78


THE AROOSTOOK MEDICAL          )
CENTER,                        )
        Plaintiff             )
vs.                            )        ORDER DENYING
                               )        ATTACHMENT
                               )
                               )
STEPHANIE GRAVES               )
        Defendant             )


The Aroostook Medical Center, Plaintiff, has brought suit against Stephanie Graves, Defendant, to recover a portion of monies paid to Defendant in the form of a sign on bonus and educational loan assistance. Defendant commenced working for the Plaintiff in September 2015 pursuant to a Letter of Employment Offer dated July 21, 2015(hereafter contract). Terms of the contract included a sign on bonus of $15,000 and also a provision for additional compensation of $692.30 per month for educational loan assistance, up to a maximum of $90,000. With respect to these payments, the contract states that portions of both the sign on bonus and educational loan assistance be repaid to the Plaintiff in the event of *termination* of employment within three years for the sign on bonus and ten years for the educational loan assistance. [1]

On September 30, 2016 Plaintiff terminated Defendant's employment *for cause*. (Complaint, ¶ 24). Per the Complaint Plaintiff seeks judgment in the amount of $26,345.35 for repayment of a certain portion of the sign on bonus and educational loan assistance as calculated by the formulas set forth in the contract. Plaintiff also filed a Motion for Approval of Attachment and Trustee Process for the same amount, $26,345.35. Defendant has answered the complaint and also filed a counterclaim alleging wrongful termination as a result of a disability. Defendant also filed an objection to the attachment. Hearing on the Motion for Attachment and Trustee Process was held telephonically August 2, 2017.

To grant a motion for either attachment or trustee process, the court must find that *it is more likely than not* that the moving party will recover judgment. M.R.Civ.P. 4A(c) and 4B(c). The contract provides that certain portions of both the sign on bonus and educational loan assistance, as calculated by the formulas set forth in the contract, may be

---

[1] The contract sets forth a formula to calculate the amounts to be repaid. For the purposes of this motion, the parties seem to concur how the formula is intended to be applied to calculate the amounts.

1

recouped in the event that "…employment is terminated for any reason…" (See sections captioned Sign on Bonus and Educational Loan Assistance in the contract, attached to the Complaint as Exhibit 1). The contract also has a specific section captioned "TERMINATION" that sets forth how the Defendant's employment may be terminated. That section lists several reasons for immediate termination *for cause*. And the section also states that either party may terminate the employment *without cause* upon ninety (90) days written notice. In this case, it is alleged by Plaintiff and admitted by Defendant that Plaintiff terminated Defendant's employment *for cause*.[2]

Again, the contract provides that portions of either the sign on bonus or educational loan assistance may be recouped if "..employment is terminated for any reason.." But the court interprets such phrase to mean that employment be terminated in accordance with and in the manner presribed by the contract. Per the contract, termination can be done immediately *for cause,* or upon ninety (90) day written notice *without cause.* Per the pleadings and submissions, in this case Plaintiff terminated Defendant's employment *for cause.* Termination was not accomplished by the alternative method of a ninety (90) day notice.

In her pleadings and in her affidavit supporting her objection to the motion, Defendant denies there was a basis to terminate her for cause. From a review of the pleadings and submissions, without an evidentiary hearing, it is not possible to find that it is more likely than not that the Plaintiff will recover judgment, because based solely on said pleadings and submissions it is not possible to determine whether or not there was a proper termination *for cause.* The criteria for granting an attachment or trustee process pursuant to M.R.Civ.P. 4A(c) and 4B(c) not being satisfied, Plaintiff's motion is denied.

Dated: August 7, 2017

Justice, Superior Court

---

[2] Defendant does not admit that Plaintiff had a valid reason to terminate her employment for cause, and indeed has asserted a counterclaim essentially alleging wrongful termination.

2