STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-20-29

SEAWEED CO. and SEASMOKE
EXTRACTS, INC.,

Petitioners

v.

MAINE DEPARTMENT OF
ADMINISTRATIVE AND FINANCIAL
SERVICES, OFFICE OF MARIJUANA
POLICY,

Respondent

DECISION AND ORDER

The matter before the court is Respondent Maine Department of Administrative and

Financial Services, Office of Marijuana Policy's ("Department") motion to dismiss Petitioners

SeaWeed Co. and SeaSmoke Extracts, Inc.'s ("SeaWeed" and "SeaSmoke", respectively,

collectively "SeaWeed Entities") Rule 80C appeal.

Factual Background

SeaSmoke and SeaWeed are two companies with shared ownership engaged in the

manufacture and sale of marijuana products. This appeal comes from a dispute over the legality

of the logo used in the marketing and sale of their marijuana products. The following facts are

derived from the Petitioner's brief, supported by an affidavit and email correspondence which for

the purposes of this motion must be taken as true.

SeaSmoke filed an application for a conditional license to operate a marijuana

manufacturing facility with the Department on December 5, 2019. (Pet. ¶ 14.) SeaWeed filed an

application for a conditional retail license on the same date. (Pet. ¶ 30.)

REC'D CUMB CLERKS OF
JAN 15 '21 PM 1:17

1

While these applications were pending, counsel for the SeaWeed entities, Hannah King, had several phone calls with Scott Lever, Deputy Director of the Department of Administrative and Financial Affairs, Office of Marijuana Policy. During these calls, Lever informed Attorney King that the Department had taken the internal position that SeaWeed's logo, which depicted a mermaid, ran afoul of the labeling provisions of the *Adult Use Marijuana Program Rule*, 18-691 C.M.R. ch. 1, § 11.1.3, which forbids, among other things, advertising on marijuana products that reasonably appears to target or appeal to individuals under the age of 21. (Pet. ¶¶ 41, 44.) Attorney King requested on multiple occasions that the Department issue a written decision on the matter that explained its reasoning. (Pet. ¶¶ 42, 45.) No written decision responsive to these requests was ever issued. (Pet. ¶ 46.) After this back and forth with the Department, both SeaWeed entities were issued active licenses on September 14, 2020. (Pet. ¶¶ 22, 35.)

The facts underlying this particular dispute begin in earnest on October 22, 2020. On that date, the Department's Director of Compliance, Vernon Malloch, conducted an inspection of SeaWeed's retail space, located at 185 Running Hill Road, South Portland, Maine. (Pet. ¶ 47.) During this inspection, Malloch identified several things as violations. The only one relevant to this appeal is the mermaid logo, which he asserted violated the labeling provisions which forbid advertising on marijuana products that reasonably appears to target or appeal to individuals under the age of 21. (Pet. ¶ 49.) Malloch informed Kaspar Henrici, SeaWeed's Director of Business Development, that he would be placing all products that featured the mermaid logo under an administrative hold due to this alleged violation. (Pet. ¶ 50.) This would require SeaWeed to send the identified products back to SeaSmoke for relabeling before they could be sold. (Pet. ¶ 51.)

2

Henrici protested, informing Malloch that doing so would cost SeaWeed several days of revenue while they closed to fix the packaging. (Pet. ¶ 52.) Malloch then offered a compromise: SeaWeed could continue selling SeaSmoke products through October 25, 2020, so long as they developed a mitigation plan to address the violations alleged by the Department by the time SeaWeed opened on October 28, 2020. (Pet. ¶ 53.)

Without waiving their objections to the Department's characterization of their logo, the SeaWeed entities developed a mitigation plan in line with Malloch's proposal. (Pet. ¶ 56.) On October 23, 2020, they presented the Department with their plan, which consisted of covering existing labels and packaging marked bearing the logo with a sticker depicting a marijuana leaf and covering the engraved logo on certain items with white paint. *Id.* SeaWeed developed this plan because it determined that it was the only way to avoid an administrative hold that would cost them significant revenue. (Pet. ¶ 57.) The Department agreed that this was an acceptable plan and did not place the products under an administrative hold so long as they were not housed in packaging bearing the logo. (Pet ¶ 58.) The underlying dispute remained unresolved however, which resulted in this current lawsuit.

Procedural Background

The SeaWeed entities filed this appeal on November 9, 2020. At that point, the Department had not issued formal findings or a written decision. The Petition alleges 5 counts: (1) an administrative appeal pursuant to M.R. Civ. P. 80C, (2) an action for declaratory judgment pursuant to 14 M.R.S. 5951, *et seq.*, (3) a due process claim under 42 U.S.C. § 1983, (4) a claim for relief under the equitable doctrine of estoppel and (5) a claim for injunctive relief. The

SeaWeed entities followed their Petition with a number of additional papers before the Department filed anything substantive. On November 19, 2020, they filed a Motion to Specify

3

the Future Course of Proceedings, requesting the court to resolve the administrative claims before the the other counts of their petition, along with a number of other procedural requests. The Department filed a Consented to Motion to Extend Time on December 3, 2020. Then, on December 8, 2020, the SeaWeed entities filed a Motion to Stay Enforcement of Final Agency Action, asking the court to order the agency to allow them to continue using the disputed logo while their appeal is unresolved.

The Department moved to dismiss the claims for lack of subject matter jurisdiction and failure to state a claim on December 9, 2020. The filed their opposition to the motion to specify future proceedings on the same day. The SeaWeed entities filed a reply in support of that motion along with an opposition to the Department's motion to dismiss on December 23, 2020. The Department filed an opposition to the motion to stay on December 29, 2020. Finally, they filed a reply to the opposition to their motion to dismiss on January 6, 2021.

While these motions were being filed in court, the administrative process continued to unfold. On December 15, 2020, the Department issued Notices of Administrative Action which the parties agree covers the violations in dispute in this appeal, among others. These notices lay out the Department's factual findings and list the violations, as well as impose a fine and order the SeaWeed entities to cease using the mermaid logo. (Ex. B to Reply to Mot. to Specify.) The notices also inform the SeaWeed entities that they have a right to a formal hearing on these issues. *Id.*

Standard

When ruling on a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6), the court views the "facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (*per curiam*) (quotation marks omitted). A complaint

4

must set forth the "elements of a cause of action or allege[] facts that would entitle the plaintiff to relief pursuant to some legal theory." Id. Facts are read in the light most favorable to the plaintiff. *Id.* "Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim." *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626 (quotation marks omitted).

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a). "Notice pleading requirements are forgiving; the plaintiff need only give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228 (quotation marks omitted). On the other hand, "a party may not proceed[] on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action." *Burns v. Architectural Doors and Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823.

When considering a motion to dismiss for lack of subject matter jurisdiction, the court does not make the same inferences in the plaintiff's favor. *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335. This is because subject matter jurisdiction is always a question of law, not of fact. *Id.* Whether there has been final agency action subject to appeal under M.R. Civ. P. 80C is a jurisdictional question. *Id.* ¶ 7.

Discussion

The central point of controversy at this stage of the litigation is whether the actions taken by the Department were a final agency action subject to appeal under M.R. Civ. P. 80C. If not, this court has no jurisdiction and this action must be dismissed pursuant to M.R. Civ. P. 12(b)(1).

The Department's powers are set out by the Marijuana Legalization Act ("MLA"), codified at 28-B M.R.S. §§ 101-1102 (2020). This statute enables the Department to promulgate rules to organize the market for marijuana in a number of ways, including setting up licensing procedures and imposing penalties for violations of licensing requirements. Under the MLA, the Department has the sole authority to impose such penalties upon a finding that a licensee under the statute has violated the statute itself, the applicable rules or a condition of licensure. 28-B M.R.S. § 104(1)(B) (2020). The Department has exercised its authority to promulgate the *Adult Use Marijuana Program Rule*, 18-691 C.M.R. ch.1, which contains the rules relevant to the current action.

The Department may, on its own initiative or on complaint and after investigation, initiate enforcement actions against a licensee. 18-691 C.M.R. ch. 1, § 12.1.5(A). An enforcement action cannot proceed unless the agency makes one of following findings:

(1) Any false or misleading statements to the Department;
(2) Other violations by the licensee or by an agent or employee of the licensee of 28-B MRS or this Rule;
(3) Violations by the licensee or by an agent or employee of the licensee of the terms, conditions or provisions of the licensee's license, including all licensing criteria required to be granted a conditional or active license; or
(4) Inactivity at the licensed premises for a period of 1 year or more without reasonable justification, including without limitation death or illness of a licensee, fire, natural disaster, or building conditions outside of the licensee's control

18-691 C.M.R. ch. 1, § 12.1.5(B). Any enforcement action taken by the Department must be made on the basis of relevant evidence and must be communicated in writing to the licensee along with a notice of the licensee's right of appeal pursuant to the Maine Administrative Procedures Act. 18-691 C.M.R. ch. 1, § 12.1.5(C).

The Rule also provides a list of the enforcement actions it may take against licensees. Upon a proper finding, the Department may:

6

(1) Impose monetary penalties;
(2) Restrict a license;
(3) Suspend a license;
(4) Revoke a license;
(5) Accept the voluntary surrender of a license;
(6) Confiscate or seize marijuana plants, marijuana or marijuana products;
(7) Destroy marijuana plants, marijuana or marijuana products;
(8) Recall marijuana or marijuana products; or
(9) Accept the voluntary surrender of marijuana plants, marijuana or marijuana products.

18-691 C.M.R. ch. 1, § 12.1.4(A).

The Department also has the power to impose an administrative hold if "as a result of an inspection or investigation of the licensee by the department or a criminal justice agency, the department determines there are reasonable grounds to believe the licensee or an agent or employee of the licensee has committed or is committing a violation of this chapter, the rules adopted pursuant to this chapter or the terms, conditions or provisions of the licensee's license." 28-B M.R.S. § 803-A (2020). This power is a temporary one that the department may use prior to taking an enforcement action against a licensee. Enforcement actions impose the statutory penalties found in 28-B M.R.S. § 802 pursuant to the rules promulgated by the Department in 18-691 C.M.R. ch. 1.

When the Department imposes a hold on a licensee it must provide notice. This notice has statutorily defined requirements. It must:

A. Include a concise statement of the basis for the administrative hold;
B. Detail the marijuana, marijuana products or marijuana plants subject to the administrative holdl
C. Describe any operational restrictions to be placed on the licensee's license during the duration of the administrative hold; and
D. Indicate actions that must be taken by the licensee as a result of the administrative hold.

28-B M.R.S. § 803-A(1) (2020). The administrative hold takes effect when the notice is provided to the licensee. *Id.*

7

Turning now to the facts of this case, it is immediately clear to the court that no final agency action has been taken. Final agency action is defined as "a decision by an agency which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and factual, and for which no further recourse, appeal or review is provided within the agency." 5 M.R.S. § 8002(4) (2020). The Notices of Administrative Action alleging violations of the statute and rule were issued on December 15, 2020, well after this lawsuit was filed. The SeaWeed entities have not yet exercised their right to a hearing on these notices, much less their right to a subsequent appeal before the agency.

The SeaWeed entities claim that the final agency action here was taken when the Department made a "legal determination that Petitioners' Logo is unlawful and, based on that determination, imposed restrictions on the operation of Petitioners' licensed businesses and threatened to place a hold on their products." (Opp. at 7.) However, the restrictions that the SeaWeed entities seem to be referring to were imposed as a part of the agreed to mitigation plan. While it is true that the Department threatened to impose an administrative hold on much of SeaWeed's inventory, SeaWeed was under no obligation at that stage to propose a mitigation plan and reach a temporary compromise with the Department. In other words, SeaWeed could have stuck to its guns and waited to see if the Department made good on its threat.

Furthermore, administrative holds are a statutory power vested in the agency entirely separate from their power to take enforcement action. These holds are entered on a temporary basis pending a determination of what action to take. Therefore, even if the Department had issued a notice of an administrative hold (which they did not), this would still not have constituted final agency action. What happened here can be more accurately characterized as a

8

voluntary agreement between the SeaWeed entities and the Department on a temporary basis to minimize lost revenue while the agency action is pending.

In the Court's view, the Department inspected SeaWeed's premises, orally communicated a position of the legality of their logo, and threatened to use its statutory power to impose an administrative hold pending a possible enforcement action. SeaWeed and SeaSmoke, committed to their logo but understandably reticent to have 90% of their inventory placed under an administrative hold until the matter was resolved, proposed a compromise that would allow them to keep operating. The Department agreed to the proposal and never issued the hold. At no point, however, was the matter resolved. The agency was still working on its enforcement action, which it announced with the notices of administrative action issued December 15. Thus, the agency action is still in its infancy, and this court has no jurisdiction.

The Court does not wish to minimize the difficulty faced by the SeaWeed entities in this matter. The market for legal adult use marijuana is in its infancy and there is always a certain degree of friction between agencies and the markets they regulate as they struggle to work out appropriate interpretations to the statutes and rules that structure such markets. Businesses facing possible agency action under these circumstances are faced with significant uncertainty and may have to make difficult decisions about how proceed until these contested issues are resolved. However, these issues must be allowed to work their way through the administrative process until appeals are filed. The reasons for that should be obvious, given the scarce record in this case.

The appropriate forum for this dispute at this stage is the administrative appeals process. The factual record is still being developed. Should the petitioners find themselves unsatisfied with the administrative process after they have exhausted all of their appeals, then they will be

9

entitled to appeal the matter to the Superior Court pursuant to M.R. Civ. P. 80C. A court will then be able to review the developed record and decide their appeal on the merits. At this stage, however, the first count must be dismissed for lack of subject matter jurisdiction.

The other counts also fail. Count 3, the claim under 42 U.S.C. § 1983, fails because Petitioners have not exhausted their administrative remedies and because other means of redress are available. *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶¶ 14-15, 60 A.3d 1248. Count 4 fails, even if the court construes it as an independent claim for equitable estoppel, because Petitioners failed to allege any misrepresentations made by the Department. *See State v. Brown*, 2014 ME 79, ¶ 14, 95 A.3d 82. Petitioners admit they were aware that the Department did not approve of their logo, they simply lacked an explanation for the reasoning behind the Department's disapproval. Count 5 fails, as it merely asks the court for injunctive relief without stating any legal basis for granting it. Finally Count 2 fails, as the Declaratory Judgment Act does not provide a cause of action or jurisdiction where it does not independently exist and all other counts are dismissed.

The entry is

Respondent Maine Department of Administrative and Financial Services, Office of Marijuana Policy's Motion to Dismiss is GRANTED.

The Motion to Specify Future Course of Proceedings and the Motion to Stay Enforcement are deemed MOOT.

The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: Jan. 15 , 2021

Harold Stewart, II
Justice, Superior Court

10