STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
LOCATION: Portland
DOCKET NO. BCD-CIV-2022-00009

AJ PROPERTY ASSOCIATES, LLC, )
 )
  Plaintiff, )
 )
 v. ) **ORDER ON**
 ) **DEFENDANT'S MOTION**
SKOWHEGAN SAVINGS BANK, et al., ) **TO DISMISS**
 )
  Defendants. )

INTRODUCTION

In this case, a customer requested that her bank wire funds to an account which, unbeknownst to her, was fraudulent and now seeks to recover the lost money from her bank. Plaintiff AJ Property Associates, LLC, ("AJ Property"), through its agent Dr. Katherine Heer ("Dr. Heer") authorized a transfer of money from Defendant Skowhegan Savings Bank ("SSB") to an account owned by a scammer. Plaintiff's Complaint sets forth three Counts. Count I is for a violation of Article 4A of Maine's Uniform Commercial Code, Count II is for negligence, and Count III is for a breach of fiduciary duty. SSB now moves to dismiss all three counts for failure to state a claim. For the reasons discussed below, the Court denies the motion as to Count I, but grants it as to Counts II and III.

STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court will "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to

1

relief pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). The purpose of a complaint is to give fair notice of the cause of action, *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶¶ 16-17, 19 A.3d 823, but mere recitation of the elements of a claim is insufficient; the plaintiff "must allege facts with sufficient particularity so that, if true, they give rise to a cause of action." *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 62 A.3d 1249 (Me. 2013). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Bonney*, 2011 ME 46, ¶ 16, 17 A.3d 123.

## FACTUAL ALLEGATIONS

Per the instant Complaint, Dr. Heer formed a real estate business, Plaintiff AJ Property, in November 2020 to focus on acquiring real estate and leasing properties to tenants. Dr. Heer, as an agent of AJ Property, was a prospective purchaser of real estate in Chesterville, Maine (the "Property"). She took out a home equity line of credit with SSB to fund the purchase. Dr. Heer had done business with SSB for over twenty years and placed great trust in SSB. At all relevant times, Dr. Heer was represented in the transaction by the real estate agency LRE and by LRE's agent, Gloria McGraw. LRE and McGraw acted as Dr. Heer's agent in the transaction regarding the Property and Attorney Ronald Aseltine acted as her lawyer. Dr. Heer and the Property's seller reached an agreement as to the purchase price and went under contract with a closing date scheduled for March 17, 2021.

Shortly before closing, on March 15, 2021, Dr. Heer received an email purportedly from Attorney Aseltine's office explaining that checks were no longer accepted and that her payment would need to be wired to an account at Chase Bank. Dr. Heer brought this information to McGraw, who indicated Attorney Aseltine's email was inconsistent with prior practice and

2

described the request as odd. McGraw did not confer with Attorney Aseltine about the matter. On March 16, 2021 Dr. Heer received another email with wiring instructions. She forwarded the message to SSB, who agreed to manage the wiring. SSB did not verify the phone number contained in the email. An unknown SSB employee stated to Dr. Heer that Attorney Aseltine would be contacted about the wiring instructions and next steps. Later that day, the Vice President of SSB visited Dr. Heer with a money wire form, which she signed without reviewing in detail. The Vice President did not provide her with guidance or advice about the propriety of wiring money as part of a local real estate transaction. Contrary to the representation made by the unnamed SSB employee, the bank did not contact Attorney Aseltine prior to wiring the money. Per the wiring form Dr. Heer signed, SSB transferred $165,921.84 to the account indicated by Dr. Heer.

At closing on March 17, 2021 Dr. Heer was given the keys to the Property and told she was "all set." The next day Attorney Aseltine called Dr. Heer and asked her to provide him with a check for the $165,921.84, indicating he had forgotten to ask for the check she told him she would bring in an email sent prior to closing. Dr. Heer explained she had never sent such an email and that she had wired the money to the account he had requested in his email to her, and Attorney Aseltine explained he had never sent an email asking her to wire the money.

The emails in question were in fact sent by a scammer who had provided Dr. Heer with fraudulent wiring information. Dr. Heer was unaware of this until after her money had been transferred. The scammer had obtained Dr. Heer's contact information from LRE, McGraw, and Attorney Aseltine and used it to trick the legitimate parties. Dr. Heer contacted SSB about the matter and an SSB manager informed her they were attempting to retrieve the money wired to the Chase Bank account. The money was not recovered from Chase Bank and SSB has informed Dr.

3

Heer she remains liable for the home equity line of credit. The Property was later sold to another buyer at a price higher than Dr. Heer was going to pay.

DISCUSSION

### I.      Count I: Violation of Article 4A

Article 4A of the Maine Uniform Commercial Code governs the respective rights and obligations of parties to a wire transfer. 11 M.R.S. §§ 4-1101-4-1507. The Sender of a payment order is the person giving the instruction to the receiving bank. § 4-1103(1)(e). The Receiving Bank of a payment order means the bank to which the Sender's instructions are addressed. § 4-1103(1)(d). The Beneficiary is the party whose account is to be credited pursuant to the payment order. § 4-1103(b)-(c). A payment order received by the Receiving Bank is the authorized order of the person identified as the Sender if that person authorized it or is otherwise bound by it under the law of agency. § 4-1202(1).

> SSB's duties as Receiving Bank are stated in relevant part as follows:

> [A] receiving bank. . . does not otherwise have any duty to accept a payment order or before acceptance to take any action or refrain from taking action with respect to the order except as provided in this Article or by express agreement. . . . A receiving bank is not the agent of the sender or beneficiary of the payment order it accepts or of any other party to the funds transfer and the bank owes no duty to any party to the funds transfer except as provided in this Article or by express agreement.

§ 4-1212. There is no dispute that Dr. Heer, acting as AJ Property's agent, was the Sender, that SSB was the Receiving Bank, that the Beneficiary turned out to be a fraud, or that Dr. Heer signed the payment order authorizing the funds transfer to the fraudulent Chase Bank account

Dr. Heer contends that there was an "express agreement" formed between her and SSB that the latter would contact Attorney Aseltine prior to completing the wire transfer, creating a

4

duty under § 4-1212. Had SSB contacted Attorney Aseltine to discuss the wiring instructions and next steps, the fraud scheme would not have succeeded. SSB's failure to adhere to this agreement, in Dr. Heer's view, resulted in AJ Property's loss because Attorney Aseltine would undoubtedly have confirmed the Beneficiary of the payment order was fake.[1] Whether this statement rises to an "express agreement" sufficient to render SSB liable under Chapter 4A is made more complicated by Dr. Heer's signing of the written authorization which stated that SSB "will not verify the *accuracy* of any account number. . . and will not be liable for any loss resulting from *incorrect* information provided." (Pl.'s Ex. A., emphasis added).[2]

The Court concludes that these competing facts cannot be resolved at this stage of litigation as to Count I. If there was an express agreement between SSB and Dr. Heer that SSB would reach out to Atty. Aseltine that is a factual issue. In resolving the factual issue, the factfinder will also have to decide if Dr. Heer's subsequent signing of the authorization relieved SSB of its obligation to adhere to the "express agreement" which Dr. Heer claims existed. The factfinder could also be called upon to determine if the written authorization provides immunity to the Bank under circumstances where fraud is at work, or whether it was intended to address circumstances where the numbers or information provided are simply incorrect.

---

[1] Dr. Heer also points to language in § 4-1202(2) stating that where there is an agreement between a bank and a customer that the authenticity of payment orders issued to that bank in the name of the customer as sender will be verified pursuant to a "security procedure," the payment order is effective, regardless of whether it was authorized, if that security procedure is "commercially reasonable" and the bank shows it accepted the order in good faith and in compliance with the security procedure and any written agreement with the customer. This provision allows banks to shift the risk of loss to customers in cases where third parties fraudulently pose as the accountholder to initiate payment orders as a Sender. That is not this case. *See Patco Constr. Co. v. People's United Bank*, 684 F.3d 197, 208 (1st Cir. 2012).

[2] Dr. Heer did not attach the wire transfer form to her Complaint as an exhibit, but this Court can consider it because she references it in ¶ 16 of the Complaint and it is well settled law that courts may consider documents central to a plaintiff's claim or referred to in a complaint on a motion to dismiss without converting it into a motion for summary judgment when the authenticity of the documents is not challenged. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43, 47-48.

In sum, at this stage of the litigation the Court is not permitted to resolve the factual dispute as to the existence of an "express agreement" or determine whether the written authorization, such as it was, was sufficient as a matter of law to nullify any purported express agreement. The Court will therefore deny the Motion to Dismiss as to Count I.

## II.     Counts II & III: Negligence and Breach of Fiduciary Duty

A claim of negligence requires a plaintiff to establish the existence of a duty, a breach of that duty, and that the breach was the actual and proximate cause of the plaintiff's injury. *Parrish v. Wright*, 2003 ME 90, ¶ 18, 828 A.2d 778. Whether a party owes a duty of care is a question of law. *Id.* Maine courts do not recognize a general common law duty of good faith on the part of banks under the U.C.C., only "honesty in fact in the conduct or transaction concerned." *Diversified Foods, Inc. v. First Nat'l Bank*, 605 A.2d 609, 613 (Me. 1992).

The existence of a fiduciary duty between parties is also a question of law. *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 35, 871 A.2d 1208. Such relationships arise where a party (i) actually places trust and confidence in fact in another, and (ii) there is a great disparity of position and influence between the parties at issue. *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 7, 54 A.3d 710. Bare assertions that a party placed trust and confidence in or relied upon another do not suffice. *Id.* ¶ 8. Disparity of position or influence requires the plaintiff to demonstrate "diminished emotional or physical capacity or. . . the letting down of all guards and bars." *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 11, 762 A.2d 44. Arms-length business relationships do not create fiduciary duties. *Ramsey*, 2012 ME 113, ¶ 10, 54 A.3d 710 (rejecting plaintiff's argument fiduciary duty existed where title agency "played an essentially mechanical role in closing a deal" plaintiff had negotiated).

6

Dr. Heer alleges SSB breached its duty of care and fiduciary duty owed to her as Sender. However, Dr. Heer seems to have had an ordinary business relationship with SSB. Dr. Heer has not alleged facts supporting her argument that her discussions with the bank about that transfer created a "far more involved commercial relationship" that could give rise to a fiduciary duty. Her twenty years of business as an SSB customer does not by itself create a close, confidential relationship because that long-standing relationship consisted of arms-length business transactions. *See Ramsey*, 2012 ME 113, ¶ 10, 54 A.3d 710. Likewise, there was not a disparity of position or influence between SSB and Dr. Heer. The Court concludes that the only duties SSB owed Dr. Heer are those set by statute under Chapter 4A, and the Court will grant the Motion to Dismiss Counts II and III.

## CONCLUSION

Based on the foregoing, the entry will be: Defendant Skowhegan Savings Bank's Motion to Dismiss is DENIED IN PART AND GRANTED IN PART.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Date: **4/29/2022**

_____
**M. Michaela Murphy, Justice**
**Business & Consumer Court**

Entered on the docket: 04/29/2022

7